IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROSALYN IRVING,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 17-3206** |
| | * | |
| **THE UNUM LIFE INSURANCE COMPANY OF AMERICA,** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Rosalyn Irving brings this action against insurance plan administrator UNUM Life Insurance Company of America ("Unum"), her former employer Northrop Grumman having been dismissed from the case. *See* ECF No. 17. The lawsuit involves a dispute over Irving's entitlement to long-term disability benefits. The benefit was insured and administered by Unum. After paying Irving for three years under the plan, in June 2016 Unum terminated her benefits, stating that the administrative record did not support a finding of further entitlement to such benefits under the plan. Irving filed two appeals; Unum upheld its decision in both. This lawsuit followed. Unum has filed a Motion for Summary Judgment, ECF No. 25, and Irving a Cross Motion for Summary Judgment, ECF No. 23. For the following reasons, Unum's Motion for Summary Judgment is **GRANTED**, and Irving's Cross Motion is **DENIED.**

### I. BACKGROUND

*A. Insurance Plan*

In November 2003, Irving was hired by Northrop Grumman Corporation in Northern Virginia as a Configuration Analyst. UA-CL-000134; Compl. ¶ 6. On July 1, 2006, Northrop

Grumman purchased Unum group long-term disability insurance, policy number 586517 002, as part of its employee benefit plan. UA-CL-000206-254. The plan provided coverage to Irving as defined by the policy. In its capacity as Plan Administrator, Northrop Grumman delegated discretionary authority for the policy's interpretation and claim determinations to Unum. UA-CL-000248.

Under the plan, an insured is initially deemed "disabled," hence entitled to disability benefits, when Unum determines that: (1) she is limited from performing the material and substantial duties of her <u>regular occupation</u> due to sickness or injury, and (2) she has a 20% or more loss in her indexed monthly earnings due to the same sickness or injury ("own occupation disability"). In other words, the plan provided a benefit to Irving for up to 24 months for any disability beginning during the coverage period, [1] so long as she provides proof to Unum that she is (a) under the regular care of a physician for the disability, and (b) unable to perform the material and substantial duties of her regular occupation due to that disability. *See, e.g.,* UA-CL-000456.

After 24 months, however, the eligibility criteria for a continuing plan benefit change. At that point, the insured is deemed "disabled" when Unum determines that due to the same sickness or injury, she is unable to perform the duties of <u>any gainful occupation</u> for which she is reasonably fitted by education, training, or experience. "Gainful Occupation" is defined as "an occupation that is or can be expected to provide [the insured] with an income at least equal to 60% of [her] indexed monthly earnings within 12 months of [her] return to work." UA-CL-000238.

Irving's last day of active employment with Northrop Grumman was September 26, 2012. She submitted two claims to Unum for disabilities occurring on or before that date. The first claim,

---

[1] Coverage under the plan ends on the last day of active employment except as provided under the covered leave of absence provision. UA-CL-000219.

dated October 2, 2012, stated that Irving had a pulmonary disability and that her last day worked was September 26, 2012. UA-CL-000076. Irving's second claim arrived on July 29, 2015, almost three years after her active employment ended, and stated that (1) she became disabled by hip and back pain ("orthopedic disability") on September 26, 2012 (her last date of coverage by the Plan), and (2) the physician treating her for that disability was Dr. Macedo of Washington Medical Group. UA-CL001066-1068.

*B. Irving's Own Occupation Disability Period—Pulmonary Disability Treatment*

Irving's first disability claim, dated October 2, 2012, stated that she had a pulmonary disability as of her last day worked, September 26, 2016. Because the policy contained a six-month elimination period prior to eligibility for long-term disability benefits, UA-CL-000209, Irving became eligible for and started receiving monthly disbursements of long-term disability benefits as of March 27, 2013. Then began the "own occupation disability" period, during which the plan would cover benefits for up to 24 months if the claimant's disabling condition keeps her from performing the material and substantial duties of her regular occupation. It is undisputed that Irving received a full disability benefit for the 24 months under her "own occupation" disability-- from March 27, 2013 through March 27, 2015. UA-CL-000209; UA-CL-000211; UA-CL-000221.

On July 22, 2013, during the initial 24 month period, Unum referred Irving to its vendor, GENEX, for representation in seeking Social Security Disability benefits. UA-CL-000431. In that referral, Unum noted that its disability benefit payments to Irving could be reduced by the amount of any Social Security award. UA-CL-000432. On May 15, 2014, Irving was approved for Social Security Disability, with a disability onset date of March 2013. UA-CL-000632. Unum told Irving

it would obtain her SSA file "for significant weight," UA-CL-000620.[2] Unum, however, never obtained the file. UA-CL-001325. On May 16, 2014, Unum requested that Irving repay its "overpayment" as offset by Irving's Social Security award in the amount of $28,086.67. UA-CL-000646.

On June 27, 2014, Unum reminded Irving that the criteria (and evidentiary requirements) for continuing long-term disability benefit eligibility, would be met only if her disability precluded her from having "any gainful employment," as of March 27, 2015. UA-CL-000675.

*C. Irving's Any Gainful Occupation Disability Period—Pulmonary Disability and Orthopedic Disability Treatment*

Under the Plan, for Irving to receive additional benefits after March 27, 2015—two years after the start of her "own occupation" disability on March 27, 2013—she was obliged to provide proof to Unum that (1) she continued to be under the regular care of a physician for one of her claimed disabling conditions, and (2) she was unable to perform the duties of *any gainful occupation* for which she was reasonably fitted by education, training, or experience, and for which she could expect to earn at least 60% of her prior earnings (as indexed) within 12 months of assuming that position.[3] UA-CL-000211; UA-CL-000221; UA-CL-000238.

On March 27, 2015, the Administrative Record reflected that Irving was being treated by two physicians--Dr. Kartik Shenoy of Temple Lung Center and Dr. David Duhamel of Pulmonary & Medical Associates of Northern Virginia. The Administrative Record reflected that Dr. Shenoy

---

[2] Unum did not clarify in its notes of the conversation what it meant by "for significant weight"; presumably, it meant for significant weight during its own evaluation of Irving's continued entitlement to disability benefits. Even if Unum meant something different, however, is of no moment, since Unum's failure to obtain Irving's SSA files did not invalidate its decision that she did not qualify for long-term disability under the "any gainful occupation standard," discussed more *infra* at 15-16.

[3] Sixty percent of Irving's pre-disability earnings, as indexed on March 27, 2016, was $5,363.29. UA-CL-001621.

4

had last treated Irving on January 12, 2015, when he had referred her to Dr. Duhamel. UA-CL-000952. Dr. Shenoy did not treat Irving again; however, in response to Unum's request for his opinion about her ability to work, Dr. Shenoy responded on May 15, 2015, "I think she can perform a desk only job with no lifting, sitting, pulling, etc." UA-CL-000983.

On June 8, 2015, Dr. Duhamel performed the first of three pulmonary therapy treatments that were aimed at alleviating Irving's pulmonary asthma-related disability. According to Dr. Duhamel's notes from her follow-up appointment, Irving was "having a somewhat rocky course post procedure but [it] is not out of the norm for a first" round of therapy. UA-CL-001163-1168. UA-CL-001141-1145. Dr. Duhamel performed a second pulmonary therapy on September 18, 2015, UA-CL-001144, and a third on November 18, 2015. In between the second and third therapies, in October 2015, Dr. Duhamel provided Unum with supplemental records about the treatments which showed that after the second treatment, Irving's chest x-ray "really looks very good." UA-CL-001257. Dr. Duhamel told Unum that Irving was thereafter also treated for a cough and asthma. By December 3, 2015, Irving's asthma was "much better," UA-CL-001500-09. Throughout this period of pulmonary treatment, and although the standard for coverage had shifted from disability precluding Irving from performing her "own occupation" to "any gainful occupation," Unum continued to pay Irving benefits.

On June 18, 2015, Unum asked Irving to confirm whether she had received subsequent treatment from treating physicians previously identified in her Administrative Record -- Dr. Love (last seen June 2013) or Dr. Macedo (last seen January 2014) -- and to identify any other physician treating her. UA-CL-001018. On June 18, 2015, Irving responded, "I have no reason to see any of those doctors you have listed in the attached information request. My disability issue is with my lungs. The doctor I am currently seeing is Dr. Duhamel." UA-CL-001024.

5

Nevertheless, on July 29, 2015, Irving submitted a new disability claim to Unum unrelated to her pulmonary issues. Instead, her claim indicated that as of September 26, 2012 (her last date of coverage under the policy), Dr. Pedro Steven Buarque de Macedo ("Dr. Macedo"), a Neurologist at Washington Medical Group, considered her disabled by hip and lower back pain. UA-CL-001066-1068. Unum requested updated records from Dr. Macedo and continued to pay benefits. Dr. Macedo produced records indicating that he diagnosed Irving's disabling condition as partial muscle tears affecting her hip and back pain, and noted that she was unable to perform even sedentary work. UA-CL-001066. On July 29, 2015, Dr. Macedo referred Irving for an MRI and a surgical consultation. UA-CL-001072-1075. The surgical consult diagnosed Irving with pelvic and thigh joint pain and noted a decreased range of motion in her left hip and pain during motion of both hips and upper thighs. UA-CL-001287.

On August 13, 2015, Unum asked Dr. Macedo for additional narrative pertaining to his opinion that Irving was disabled and unable to perform even sedentary work. On October 7, 2015, Unum cautioned Irving that her records might not support her continued eligibility for a long-term disability benefit, noting that it would need additional medical records, but indicating that it would continue to pay her under a "reservation of rights." UA-CL-001217. Unum subsequently requested updated records from Dr. Macedo. The single new page from Dr. Macedo was a prescription for an IV lidocaine infusion. UA-CL-001295.

On November 19, 2015, Unum contacted Irving for assistance in obtaining the additional information it had requested from Dr. Macedo, and for an update with respect to her second surgical consult for leg pain. Irving advised that she had to travel to the Mayo Clinic because no one else would perform the surgery she needed, but stated that she was to have a consultation at Johns Hopkins first. Irving also advised that a Physician's Assistant at Dr. Macedo's office had

6

completed the form Unum requested in August, and that she would upload it to Unum's website. The information she uploaded suggested that in November 2015, Dr. Macedo believed Irving could not perform full-time seated work and considered the side-effects of pain medication to be disabling to Irving. UA-CL-001293-1294. The several Johns Hopkins doctors Irving saw diagnosed her with hip pain and recommended that she use Aleve and physical therapy to manage her pain. UA-CL-001588.

On April 29, 2016, Irving reported that she was scheduling a third surgical consult for her hip pain with Dr. Evan Argintar of MedStar Washington. Records from that consult showed Dr. Argintar had observed that Irving had full range of motion in her hip and no hip impingement; he did diagnose her with chronic lumbar pain and lower back pain, and did not recommend surgical intervention. UA-CL-1655-1656. On May 4, 2016, Dr. Argintar further "explained to [Irving] that this tends to be an issue that resolves without surgery" and referred her to a Dr. Guerrero to do an ultrasound-based injection. UA-CL-001657. On May 12, 2016, Dr. Argintar reported to Unum that he considered Irving capable at that time of returning to work subject to a 6-8 week restriction period limiting prolonged standing or walking, heavy lifting, or carrying. UA-CL-001652.

In May and early June 2016, Unum saw Dr. Luis Guerrero, a doctor with Medstar Rehabilitation Network, for hip injections. He diagnosed Irving again with hip pain and did not prescribe any medication. On June 5, 2016, Dr. Guerrero reported to Unum that he considered Irving capable of performing sedentary work without any limitation, although he later revised that opinion. UA-CL-001689.

*D. Unum's Internal Reviews, Vocational Assessments, and Eligibility Decisions*

Throughout this period, Unum was continuing to conduct internal paper reviews of Irving's disability status based upon her medical information. Several times throughout, Unum's Dr.

7

Maribelle R. Kim determined Irving was capable of performing sedentary work, an opinion which was seconded by Unum's Dr. James Bress after reviewing Dr. Kim's reports. *See, e.g.,* UA-CLL-001120, 1126, 1186, 1327, 1338, 1595, 1602. On April 19, 2016, Unum had the Administrative Record reviewed internally again by Drs. Kim and Bress. Both doctors determined that the medical evidence did not support Irving's inability to perform sedentary work or the restrictions noted by Dr. Macedo. UA-CL-001601-1605.

On April 29, 2016, using the information provided by Irving, Steven Jacobs, a Senior Vocational Review Consultant, performed a vocational assessment to see if there was any gainful employment Irving could hold that would provide her the specified wage. Based on the information Irving had provided,[4] he confirmed that sedentary occupations existed that Irving would qualify for based on her education, training, and experience, and for which she could expect to earn at least $5,363.29 per month (the gainful wage applicable on June 29, 2016) within one year. UA-CL-001624-1626. The restrictions and limitations described in this assessment noted that "the insured is not precluded from performing sustained full-time activities which include: exerting up to 10 lbs of force occasionally, and/or a negligible amount of force frequently to lift, carry, push/pull; mostly sitting with the ability to reposition/stretch for comfort; occasional standing/walking." *Id.*

After the vocational assessment, Unum verbally and by letter dated June 29, 2016 notified Irving of its determination that she was no longer eligible to receive a monthly long-term disability

---

[4] On December 18, 2014, Irving reported to Unum that she obtained a G.E.D. in 1978 and did some on-line college coursework in 2009. UA-CL-000823. On her resume, Irving describes herself as follows:
> Senior IT professional with over twenty-five years experience in computer operations, systems analysis, customer support, project management and configuration management. Demonstrated skills in planning, team building, project management resource allocation, and staff management. Experienced in the introduction and management of effective hardware, software, and work process procedures to maximize system efficiency and reduce costs. Strong analytical and organizational skills with the ability to identify operational deficiencies and design system improvements. UA-CL-000880.

benefit after June 29, 2016. UA-CL-0001709-1717. The letter included a narrative detailing Unum's reasons for this determination. *Id.*

Irving appealed this denial of long term disability benefits by letter submitted on February 9, 2017. UA-CL-001773-1943. In support of her appeal, Irving hired a Physical Therapist, Carlos A. Martinez, to author a Functional Capacities Evaluation (FCE). Martinez's evaluation noted diminished lateral hip range of motion with pain and "part-time workplace tolerance," concluding that Irving was presently unemployable in any position with low improvement potential. Irving also underwent a neuro-rehabilitative evaluation by Dr. Rick Parente, hired by her Attorney, Scott Elkind, Esquire, in which Dr. Parente concluded that Irving was "unable to return to work given the combination of her physical and cognitive limitations making it hard for her to function effectively."

The documents provided with that appeal letter also included a note from Dr. Guerrero, indicating that he had revised his June 2016 opinion that she could work in a sedentary capacity and would defer instead to the findings of the FCE, as noted above. UA-CL-011614. The appeal also included witness letters from Irving's family and friends supporting her claim of disability.

In the course of reviewing the appeal, Unum received an opinion from Dr. Duhamel (Irving's Pulmonologist). On April 5, 2017, Dr. Duhamel, who had treated Irving's pulmonary disability, opined that he also considered Irving capable of performing sedentary work as of June 29, 2016, as had Dr. Argintar, who treated her orthopedic disability. UA-CL-002455-2456. On April 20, 2017, Unum also had a second Senior Vocational Rehabilitation Consultant review the earlier occupational and vocational assessments and the report of Mr. Martinez to verify whether Unum's initial assessments and report remained accurate and relevant. Unum determined that sedentary occupations still existed for which Irving could earn the applicable gainful wage. Unum also

9

retained the services of an independent Psychologist, Dr. Jana Zimmerman, to review Dr. Parente's reports and conclusion that Irving's work capability was limited by her "cognitive limitations." On April 24, 2017, Unum rejected Irving's appeal, explaining the basis for its decision to uphold the June 2016 claim decision terminating benefits. UA-CL-002478-2489.

On June 9, 2017, Irving submitted a second appeal. UA-CL-002770-2776. The second appeal provided no new evidence but took issue with parts of Unum's review. On June 15, 2017, Unum notified Irving that it was denying her appeal once again explained why it was upholding its June 29, 2016 claim determination. UA-CL-002788-2790.

Irving filed her Complaint in this Court on October 31, 2017. After conclusion of discovery, both parties filed Motions for Summary Judgment. Irving's attorney also filed hundreds of pages of additional material in addition to the already filed administrative record. Both parties were heard through counsel at a Motions Hearing on July 9, 2018. ECF No. 32.

## II. ANALYSIS

*A. Standard of Review*

Under Federal Rules of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 233 (1986). When the parties have filed cross-motions for summary judgment, the Court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). Moreover, "[w]hen considering each individual motion, the court must take care to 'resolve all

factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id*.

Where a benefit plan provides discretionary decision-making authority to the claim administrator, as it does here, a district court's review is governed by an abuse of discretion standard under which the administrator's decisions will not be disturbed, even if the court "would have come to a different conclusion independently," if the decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997*); see also Johanssen v. Dist. No. 1–Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 168 (4th Cir. 2002). A denial of benefits will be considered reasonable and will not be overturned for abuse of discretion if the decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008).

The Fourth Circuit has identified eight nonexclusive factors that courts may consider in determining whether an abuse of discretion has occurred: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have. *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008).

A plan administrator has a "structural conflict of interest" where, as here, the administrator is "responsible for both evaluating and paying claims." *DuPerry v. Life Ins. Co. of North America*,

632 F.3d 860, 869–70 (4th Cir. 2011). "[S]uch a conflict does not alter the applicable standard of review, but rather is 'but one factor among many that a reviewing judge must take into account.'" *Id*. at 869.

Finally, in reviewing the reasonableness of Unum's decision, the Court will only consider the evidence placed before Unum when making the decision. *See Bernstein v. CapitalCare, Inc*., 70 F.3d 783, 788-89 (4th Cir. 1995).

### B. Discussion

The question before the Court therefore is whether Unum's decision—that Irving's pulmonary disability claim (2013) and her orthopedic disability claim (2015) were not disabling per the policy's definition on June 29, 2016—was the result of a deliberate, principled reasoning process supported by substantial evidence, or whether Unum abused its discretion. As the Court now explains, the Court finds Unum's decision was reasonable and supported by substantial evidence. Irving's arguments are either irrelevant, incorrect, or insufficient to demonstrate abuse of discretion by Unum in the denial of her disability benefits.

#### a. Adequacy of Medical Reviews and Appeal Determination

Irving argues that Unum abused its discretion by conducting a "selective" review of her case, by not considering certain evidence while granting greater weight to other evidence, and by not considering the effects of her pain medications. But so long as there was "substantial evidence" supporting its determination, Unum would not have abused its discretion under ERISA. Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984) (overruled on other grounds). Thus, the mere fact that Irving can point to some evidence to rebut Unum's determination does not undermine Unum's overall assessment of her medical record.

In ERISA claims, unlike Social Security Disability claims, no increased weight is given to the testimony of treating physicians. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, (2003). So long as insurers credit treating physicians' opinions, they need not afford them special weight or deference. *See Evans*, 514 F.3d at 324–25. In fact, the record demonstrates that Unum paid particular attention to Dr. Macedo's opinion that Irving could not perform sedentary work in assessing her claim. But Unum also credited Irving's other treating doctors, including her pulmonologist, Dr. Duhamel, and her orthopedic surgical consult, Dr. Argintar, who disagreed with Dr. Macedo and believed Irving was capable of sedentary work. *See Neilson v. Unum Life Ins. Co. of Am.*, No. CCB-11-3317, 2013 WL 1010361, at *6 (D. Md. Mar. 13, 2013) ("While Neilson has obviously undergone a significant impairment in his abilities and is suffering as a result, he is equally not entitled to selectively point to medical records in seeking LTD benefits, nor may he insist that one of his physicians be credited over others.").

Moreover, while the failure to consider side effects of medications taken by a plaintiff has been found to be arbitrary and capricious in some cases, the record does not reflect the assertion that Unum ignored Irving's pain condition in making its determination here. *See, e.g.*, AR 1712-1713 (discussing reported pain and certain medications).

Additionally, physician determinations made after the relevant point of disability are of little relevance in determining if someone was disabled on a given date. *See e.g. Frank v. Liberty Life Assurance Co. of Boston*, No. GJH-15-124, 2017 WL 2172320, at *12 (D. Md. Mar. 1, 2017) ("[I]t is not possible to know whether the factors leading to diagnoses made in June 2014 existed on December 30, 2013."); *see also Dunbar v. Orbital Scis. Corp. Grp. Disability Plan*, 265 F. Supp. 2d 572, 587 (D. Md. 2003). Irving's relevant date of disability treatment in this case is June 29, 2016. *See Frank* at 7 (Frank's relevant date of disability was the date her claim was closed, not

the date of appeal or date of denial of appeal). Any claims of sickness or injury that occurred after September 26th, 2012 (or were treated after June 29, 2016) were not within Irving's insurance coverage period and thus are not relevant facts for present purposes. Only the time period and scope covered by the plan is relevant in an ERISA claim. *Cf. Walker v. Bechtel Savannah River, Inc.*, No. CIV.A. 1:04-1370-MBS, 2010 WL 3749091, at *12 (D.S.C. Sept. 20, 2010) ("Because the Plan provides that an individual's eligibility for coverage ends when the individual is no longer an active employee, the only evidence relevant to the Plan Administrator's determination was evidence addressing Plaintiff's condition on or before her termination date."). In light of the foregoing, the Court finds Unum's overall assessment was reasonable and not an abuse of discretion.

Irving further argues that Unum abused its discretion in failing to conduct an independent medical examination and instead performed only paper reviews from supposedly biased physicians who regularly review claims for Unum. But neither ERISA nor the plan requires Unum to conduct a physical examination. *See Piepenhagen v. Old Dominion Freight Line*, 395 F. App'x. 950. 957 (4th Cir. 2010) (rejecting the argument that plan administrator had duty to conduct independent medical examination before denying benefits because claimant, not plan administrator, has duty to provide evidence of disability). ERISA in fact allows plan administrators to rely on paper reviews of medical records by consulting physicians so long as the information before the physicians supports their determination. *See Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 125 (4th Cir. 1994) (finding no abuse of discretion where plan administrator relied on paper reviews of consulting physicians).

Here, Unum had multiple doctors review Irving's entire medical record, and also relied on opinions from several of her treating physicians. While Dr. Macedo eventually changed his opinion

14

and came to defer to Mr. Martinez's finding that Irving was unable to work at all, other treating physicians believed her capabilities would allow her to work as long as the work was sedentary. Unum had an abundance of medical evidence and did not require an independent examination.

Irving also argues that Unum is trying to have its cake and eat it, too, benefiting from her Social Security Disability benefits while rejecting the finding that she is disabled. However, ERISA plan administrators are not bound by an SSA finding of disability, and "employers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disability Plan v. Nord*, 538 U.S. at 833. Although Unum never obtained Irving's SSA file as it said it would, it apparently did consider the SSA's determination that Irving was disabled in its decision-making process. *See, e.g.,* UA-CL-001325 ("SSA file was not obtained, but based on medical review, our decision differs from SSA due to updated records obtained including that [Irving] underwent bariatric surgery for her obesity in 2014, and records indicate that she has not had any recent ER visits or hospitalizations [related to her pulmonary disability] in the last year. Recent records confirm [Irving] underwent [the pulmonary therapies] in 2015 and pulm[onary] exams from the past year indicate no respiratory distress, normal respiratory effort, breath sounds, no wheezing…").

The Fourth Circuit has held that the weight a reviewing court should give a social security disability award depends on the level of similarity between the descriptions of disability used by the SSA and the covering insurance plan. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999) ("[O]ur consideration here of the SSA's finding should depend, in part, on the presentation of some evidence that the "disability" definitions of the agency and Plan are similar"). If there is no indication that the standards are analogous, the "Plan Administrator [is] under no obligation to weigh the agency's disability determination more favorably than other evidence." *Id*. More recent

cases in the Fourth Circuit have gone even further than that. *See Piepenhagen*, 395 F. App'x at 957 ("[B]arring proof that the disability standards for social security and the plan in question are analogous, we would not consider an SSA award in an ERISA case."). *But see Neilson*, ("Nevertheless, because the Policy's definition of disability was similar to the SSA's definition (both consider whether the claimant is capable of "any" gainful employment)… it is appropriate to consider whether the SSA's determination is evidence that Unum abused its discretion."). In fact, Unum apparently considered Irving's improved condition in deciding how to weigh the SSA's determination that she was entitled to Social Security Disability benefits. In sum, however, whatever may have been Irving's social security disability determination, the Court does not find it critical to the disposition of this case. Unum also found Irving to be sufficiently disabled to qualify for benefits during the period she obtained her social security disability benefits award; it was only once the plan's definition of disability changed that Unum found her no longer eligible.

## C. *Adequacy of Vocational Review*

Unum conducted a vocational assessment that included an assessment of sedentary jobs available in Irving's geographic area. "Under the circumstances, Unum was under no obligation to conduct a more extensive labor market survey or other evaluation." *Neilson*, 2013 WL 1010361, at *7 (citing *Pipenhagen*, 640 F.Supp.2d at 790–91). At oral argument and in his papers, Irving's counsel argued that the vocational assessment was flawed because Unum did not take into account that Irving was 61 years old and that literature shows that people of that age often have difficulty finding jobs. ECF No. 34 at 33. As the Court explained at the time, that overly general argument is irrelevant to this particular case because there is no evidence that Irving had looked for a job and found none available. This is also true of the argument Irving's counsel advanced at oral argument, that Irving was being "grossly overpaid" for her job at Grumman and would therefore

16

be unable to find a job with the requisite salary threshold as defined by the Plan. *Id.* at 34. That argument is purely speculative and in no way establishes that the vocational assessment was wrong.

*D. Prior Unum Disability Determinations and Conduct*

Irving devotes much of her Cross-Motion for Summary Judgment to the suggestion that Unum has a history of unfair claim reviews. She references testimony from former or current Unum employees or contractors in an effort to show that Unum is unable to conduct objective claim reviews because it sets financial targets or pressures employees to deny claims and compensates employees based on Unum's corporate-wide performance. In effect, this generalized argument would undermine any and every claim Unum has denied over the last ten years. The Court focuses in this case on Unum's specific actual decision-making process as set forth in the administrative record in this case, not general criticisms of Unum or its affiliates. *See Kamerer v. Unum Life Insurance Company of America*, 251 F. Supp. 349, 352 (D. Mass 2017) ("This court will not assume Unum is biased every time it denies a claim simply because it employed unfair claims practices more than a decade ago, particularly in light of changes to claims processing it has since made.").

The record fairly establishes that Unum has considered all of the medical evidence provided in Irving's claim file and set forth a reasoned decision denying her claim.

### III. CONCLUSION

Under the abuse of discretion standard, Unum's determination to terminate Irving's long-term disability benefits was reasonable and supported by substantial evidence, especially in light of opinions from several of Irving's own treating physicians who opined that she could perform

fully sedentary work. Irving's Cross-Motion for Summary Judgment (ECF No. 23) is accordingly **DENIED**, and Unum's Motion for Summary Judgment (ECF No. 25) is **GRANTED.**

A separate Order will **ISSUE**.

                                                 /s/
                                      **PETER J. MESSITTE**
                           **UNITED STATES DISTRICT JUDGE**

**March 25, 2019**